J. S. McWILLIAMS AUTO COMPANY *v.* GIBBONS.

4-5341                                     124 S. W. 2d 211

Opinion delivered January 30, 1939.

*J. S. Brooks* and *J. S. Brooks, Jr.,* for appellant.

*Byrd & Love,* for appellee.

HUMPHREYS, J. This suit was commenced in the municipal court of El Dorado by appellant against appellee to recover $222.39, an alleged balance due for a second-hand automobile sold by appellant to appellee on the installment plan, it being provided in the contract of sale and purchase that the failure to pay any installment, when due, should make the entire note due and payable at the option of the vendor.

It was alleged that after paying three monthly installments appellee made default and that appellant, in the exercise of its option, has declared the entire amount of the unpaid balance due; and prayed judgment for the balance due against appellee, that the automobile be sold and the proceeds applied to the payment of the judgment, interest and cost.

A default judgment was rendered against appellee in the municipal court and the automobile ordered sold pursuant to the prayer of the complaint, from which an appeal was duly prosecuted to the circuit court of Union county, second division.

In the circuit court appellee filed an answer to the complaint, admitting that he purchased the automobile upon the installment plan and that he executed a title-retaining note evidencing the balance due, but stated that he did so upon the representation that it was in good condition, which representation was untrue; that appellant refused to place the automobile in operating condition as represented, whereupon, he returned the automobile to appellant in settlement of the debt.

The cause was submitted to a jury upon the sole issue of whether appellee returned the automobile to an authorized agent of appellant in full settlement of the balance due thereon.

The jury returned a verdict for appellee and from the judgment dismissing appellant's complaint it has duly prosecuted an appeal to this court.

Appellant contends there is no substantial testimony in the record tending to show the automobile was re-

turned to an agent authorized to accept the car in settlement of the debt.

The record reflects that Mrs. I. M. Gibbons took the automobile back to appellant and that it was accepted in settlement of the balance due on it. The following is an excerpt from her testimony relative to taking the car back and delivering same to appellant:

"Q. When you arrived at the used car lot, did you turn this car over to the first gentleman you saw, A. Well, I drove the car in the yard and I was standing by the side of it, and some fellow walked around there and he said he wasn't the fellow who had charge of it, and he went back and the other fellow told me when he come out that he had charge of the second-hand lot. Q. Is 'the other fellow' in the room now? A. Yes, sir. Q. Is he the gentleman who testified a while ago? A. Yes, sir, Mr. Roscoe. Q. Did you have any conversation with him about it? A. He asked me what he could do for me, and I says I have brought the car back, we are unable to pay for it, and he says we don't take them back, and I says, 'What will I do with it because we are unable to pay for it?; he says, 'We don't make a practice of taking them back, but I will take it back.' He says the car stood good for the payments and he could make money on it, and I says, 'Well, you are perfectly welcome to it because we can't pay any more on it.' He said he could make money on it by repairing it. Q. What did you do with the car? A. I left it sitting in the yard there. Q. With him, you left it with him? A. Yes, sir."

Upon cross-examination the following questions and answers appear in her testimony: "Q. When you brought this car back Mr. Roscoe came up to you and asked you what he could do for you? A. Yes, sir Q. And he told you he would take the car back? A. He introduced himself — he told me he would take it back. Q. And for you to forget the balance due on it? A. No, not in those words. Q. But that was the idea? A. Yes, sir. Q. Did you think Mr. Roscoe was in charge of McWilliams' business? A. He told me he had charge of the second-hand yard. Q. He said the car was worth more than you owed and we will take it for the

balance due? A. He told me that the car stood good for the balance due on it and that it could be repaired and they could make money on it."

Mr. Jay Baker testified that he was the general manager of appellant's company and that he did not give Travis Roscoe any authority to accept the car in settlement of the debt due thereon and Travis Roscoe testified that he was in charge or the manager of the used car lot, but that he had no authority to accept cars which had been sold in settlement of the balance due on them. In explaining why the car was taken back, Mr. Jay Baker said: "When he brought the car back there wasn't anything for us to do but to turn it over to the used car department." He also testified that Mr. Roscoe "looks after our used cars."

Mr. Roscoe denied that he agreed to take the car back for the indebtedness and that it was left on the lot without any permission from him.

Considering the evidence as a whole, we think the jury could well and reasonably draw the inference that appellant, through its authorized agent, received the car in payment of the debt, especially in view of the fact that the general manager said they turned it over to the used car department.

The law is well settled that a principal is liable for the acts of his agent done within the apparent scope of his authority. *Cotton* v. *Ingram,* 114 Ark. 300, 169 S. W. 967; *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, 146 S. W. 130. The jury, of course, had a right to believe the testimony of Mrs. I. M. Gibbons with reference to what was said and done when she delivered the car and taking into consideration all that occurred, and especially the fact that the car was turned over to the used car department by Mr. Baker, who was the general manager, the jury had a right to draw the inference that Mr. Roscoe was acting within the scope of his authority when he agreed to take the car back in settlement of the debt against it. This is what the jury did as evidenced by its verdict. We, therefore, find that there is substantial evidence in the record to support the verdict.

No error appearing, the judgment is affirmed.